## DETROIT SAVINGS BANK v. HIGHLAND PARK STATE BANK OF DETROIT.

1. BANKS AND BANKING—TRADE-NAMES—CORPORATIONS—EQUITY— INJUNCTION.

On a bill by the Detroit Savings Bank to enjoin the threatened use of the name "Bank of Detroit" by another banking corporation, *held*, that the names are so dissimilar as not to require intervention by a court of equity.

2. SAME—CONFUSION—EVIDENCE.

Where the two banks were located in the same building in the city of Detroit, evidence as to some confusion on the

part of the public, *held*, to be due to carelessness and not to similarity of names.

3. SAME—FICTITIOUS NAMES—CORPORATE NAMES—STATUTES.
    Under sections 7968 and 9018, 2 Comp. Laws 1915, requiring the corporate names of banks and other corporations to be dissimilar to any other, only the corporate name will be recognized, and no rights will be acquired because of a fictitious or popular name occasionally applied by the public.

4. SAME—GEOGRAPHICAL TERM—DESCRIPTIVE NAME—INJUNCTION.
    The use of the properly descriptive geographical word "Detroit" by a bank in its business name, in connection with the word "Bank," descriptive of its business, will not be enjoined, when it is acting in good faith, in the absence of estoppel or of actual fraud.

Appeal from Wayne; Hart, J., presiding. Submitted April 19, 1918. (Docket No. 11.) Decided June 3, 1918.

Bill by the Detroit Savings Bank against the Highland Park State Bank of Detroit and others to enjoin defendant bank from changing its corporate name to Bank of Detroit. From a decree dismissing the bill, plaintiff appeals. Affirmed.

*Miller, Smith, Canfield, Paddock & Perry* (*Sidney T. Miller*, of counsel), for plaintiff.

*Anderson, Wilcox & Lacy*, for defendants.

STONE, J. The learned circuit judge who heard this case at the circuit, and who filed in writing his reasons for dismissing the bill of complaint, so concisely and clearly stated the issue, the facts found and the law of the case, with his conclusions thereon, which so accord with our views that we adopt the same:

*"Court's Findings of Facts.*

"1. That in 1849 the Detroit Savings Fund Institute was organized and began a savings bank business in

Detroit.   In 1871 it was succeeded by The Detroit
Savings Bank, which ever since has done both a commercial and savings bank business in Detroit under
that title, now is a prosperous bank there, and is the
plaintiff in this suit.

"2. On March 1, 1916, a new bank was organized
under the laws of the State of Michigan, with its place
of business at Detroit, known as the 'Highland Park
State Bank of Detroit' which is now a prosperous
bank, and is the real defendant in this suit.

"3. From the beginning the 'Highland Park State
Bank of Detroit,' emphasized the words 'Bank of Detroit' on all stationery, advertisements, signs, and on
all checks, by printing these words in larger letters,
for the purpose of distinguishing it from the Highland
Park State Bank of Highland Park.   This was so
prominent that it attracted the attention of the officers
of the plaintiff bank, and these officers thought sooner
or later the words 'Highland Park' would be dropped.

"4. These banks, at least their main offices, are both
located in the Penobscot building, Detroit, across the
lobby from each other.

"5. Some time in September, or October, 1916, the
defendant bank took steps to change its name to Bank
of Detroit, and after some correspondence between
plaintiff and defendant in regard thereto, plaintiff
started this suit to restrain defendant from using the
name 'Bank of Detroit' for the reason the name was
alleged to be so similar to plaintiff's corporate name,
that defendant bank had no legal right to make the
proposed change.   By mutual arrangement no preliminary injunction was applied for, both sides being
anxious to have a final hearing and have the question
there decided.

"6. Plaintiff has not shown any facts that would
indicate the defendant bank has been guilty of any
fraud in making the proposed change, or by its conduct should be stopped from so doing, but plaintiff by
its proofs attempts to establish public confusion.

"7. The confusion which the plaintiff has shown
seems to have been more from carelessness, and lack
of ordinary care, than anything else.   Some stress is
laid upon misdelivery of letters owing to similarity of
names.   Mr. Garger, the postman, and a witness for

plaintiff, says there was not any confusion after the words 'Bank of Detroit' were emphasized (R. 60-63). Three specific instances were cited. One was a boy delivering a message, and he knew there were two banks there, and he thought he would try both, and he tried the plaintiff bank first. It would seem this confusion was due more to location than to names. Another witness did not read the name and attempt to distinguish but simply hurried into plaintiff bank to cash his check. The third, a girl, realized the mistake when she got to the window to have her check certified. Outside of these three cases the proofs are largely, on the part of plaintiff, that there was confusion, without tracing it to similarity of names, or else in the opinion of the witnesses there was liable to be confusion.

"8. The Germans use 'Spar' for savings and the Polish use the word 'Oszczednosci,' so in those languages, there is a distinguishing word in the two titles, which would prevent confusion.

### "Conclusions of Law.

"1. I do not find that the plaintiff has shown in this case by (sustaining the) burden of proof that there would be confusion owing to similarity of names. In a large city, where two banks are located in the same building, there would be some confusion, if names were entirely dissimilar, and I think that is what has happened here. If the three people, who were specifically mentioned, were confused, when the words Highland Park State Bank of Detroit were on the checks and windows, it would seem they would be deceived under any circumstances. This impresses me as resulting from haste and carelessness, which is always apt to occur under such conditions. All corporations, doing banking business, have the word 'Bank' in. A great many corporations use the word 'Detroit' and if no two corporations can use the word 'Detroit' in their title, no matter what the arrangement in the same is, or other conditions are, then there are many, many corporations entitled to redress in the court. I do not think that a corporation, in the use of a name, has to guard against carelessness, haste, thoughtlessness, or things of that nature, but it has a right to presume people will use ordinary care to prevent confusion.

"2. I do not think mere occasional or extraordinary circumstances establish public confusion.

"3. I think, under the proofs here, the law, considering the volume of business done, would be bound to say there was no public confusion.

"4. I cannot conclude from the testimony here that the public, using ordinary care, will be misled by the alleged similarity of these names.

"5. I think the Detroit Savings Bank and Bank of Detroit are dissimilar names within the meaning of the law, both in reference to banking, and other corporations, and as far as equity would apply.

"6. The bill, therefore, should be dismissed, with costs to defendants."

A similar question was before this court in *Michigan Savings Bank* v. *Dime Savings Bank,* reported in 162 Mich. 297. In reversing a decree for the complainant in that case, Justice OSTRANDER, in a unanimous opinion, used the following pertinent language:

"It is not claimed that the defendant bank has any fraudulent purpose—a design to mislead the public or to injure complainant—in changing its corporate name. No director of one bank is also a director of the other, no contract relations between the two institutions are relied upon by the complainant, and defendant bank is not estopped to use the name. But it is claimed that if two banks, with offices upon the same street, in the same city, use names so similar, confusion and injury will result; that the statute forbids the defendant bank to assume a name so similar to that of complainant bank, and that equitable principles support the decree appealed from.

"The banking law, 2 Comp. Laws, § 6091, requires persons associating to organize a bank to specify in the articles of association, among other things,—

"'The name assumed by such bank, which shall be, in no material respect, similar to the name of any other bank organized under the laws of this State.'

"So Act No. 232, Pub. Acts 1903, in section 2 thereof, relating to names to be assumed by corporations, contains the proviso that—

" 'No name shall be assumed already in use by any other existing corporation of this State, or corporation lawfully carrying on business in this State, or so nearly similar as to lead to uncertainty or confusion.'

"Courts of equity are frequently called upon to remedy conditions which grow out of the use by a corporation of a name similar to the name of another corporation, carrying on a business of the same character. In such cases it is usually, if not always, true that relief is granted because experience has demonstrated that the public is misled, and the corporation first established is defrauded on account of the similarity of the names. We assume that the statutes referred to were intended to prevent, to some extent, the conditions which in such cases, when they arise, make a resort to the courts necessary. In this view of the legislation, in its enforcement by the courts as a preventive measure, it is necessary to consider, in advance of a demonstration based upon experience, and in a case where neither corporation has, or can acquire, the general right to an exclusive use of the words employed in the name, whether it is likely that the public will be misled, and whether the complaining corporation is likely to be injured. It is evident that experience, not in the particular case, but in other cases, must still be employed in determining the fact, and that mere conjecture that some confusion may result is not ground for granting equitable relief. We may also consider that if relief is refused and conjecture is in actual experience made fact, the complaining corporation may have its remedy.

"We are not impressed that the testimony introduced on the part of complainant supports even the conjecture that the public, using ordinary care, will be misled by the alleged similarity of the names of these corporations. If it is true, and we assume that it is, that the public is apt to seize upon some part of the corporate name and use it as descriptive of the whole and as designating the particular bank, we may also assume that the words 'Michigan Savings' in one case, and 'the Michigan' in the other, will be apt to be used and will be properly and sufficiently distinctive. It is the general rule that when they are properly descriptive, the use of geographical words in a business name

will not be enjoined, in the absence of estoppel or of actual fraud, or public misleading.   In enforcing a statute intended to prevent some of these results, it must be made to appear that it is reasonably certain that they will follow the use of the name sought to be enjoined.   The principle is the same in either case."

The dissimilarity or unlikeness of the title "The Detroit Savings Bank" and "Bank of Detroit" are so great, and so striking, that no argument, it seems to us, is necessary.

Upon the subject of public confusion, a careful reading of the evidence leads us to the conclusion reached by the trial court.   Such confusion as was shown was due to carelessness and lack of ordinary care, and not to similarity of names.

Some claim is made by plaintiff that it has come to be known, sometimes, as "The Detroit Bank," "Detroit Bank," or "The Detroit."   The fact, if it be a fact, that such a pseudonym, or fictitious name has been occasionally used, will not be availing here.   The plaintiff must stand on its corporate name.   Manifestly, both of the quoted statutes recognize the corporate name only.   Nobody would doubt the right of the defendant bank to use the word "Bank," as descriptive of its business.   May it not also use the geographical word "Detroit," in connection with the word "Bank," as properly descriptive, when acting in good faith, and in the absence of estoppel or of actual fraud?   We think so, in view of the *Michigan Savings Bank Case, supra.*

An examination of the record shows that the usual, abbreviated, popular name applied to the plaintiff, is "Detroit Savings," thus rendering confusion still more unlikely.   With the questions of similarity of assumed name, and public confusion disposed of, very little remains to be said.

It is claimed by plaintiff that, independently of the statute, it is entitled to relief on the general equitable

principle that where a corporation has built up a business of its own, no other corporation has the right to assume a name so similar as to mislead the public, and *Lamb Knit-Goods Co.* v. *Lamb Glove & Mitten Co.*, 120 Mich. 159, and other cases are cited. The cases cited turn upon the question of such similarity as to be liable to mislead the public—or to lead to confusion of the public.

Both questions of fact having been found against the plaintiff, in what has been already said, in our opinion it is not entitled to the relief prayed. The decree of the circuit court is therefore affirmed, with costs to the defendants.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, and KUHN, JJ., concurred. BROOKE and FELLOWS, JJ., did not sit.